UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| RITA METSCH, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   No. 2:20 CV 203 |
| | ) |
| PORTER COUNTY, INDIANA, | ) |
| *et al.*, | ) |
| | ) |
|     Defendants. | ) |

## OPINION and ORDER

This matter is before the court on the defendants' motion to dismiss plaintiff's federal claims. (DE # 17.) For the reasons set forth below, the motion is granted.

### I.    BACKGROUND

At times relevant to this lawsuit, plaintiff was "employed as a nurse at the Porter County Jail through Quality Correctional Care, LLC, a contractor with the Porter County Jail." (Pl.'s Compl., DE # 1 at 3.) On January 3, 2020, plaintiff was "directed by her employer to give [a] forced injection of medication to [an] inmate" pursuant to a court order. (DE # 1 at 3.) According to plaintiff, "[Defendant] Officer Perez was also informed of the court's order for a forced injection of medication and that the inmate would need to be placed in a restraint chair for the protection of the Plaintiff while she administered the forced injection of medication." (*Id.* at 4.) "Nonetheless, Defendant Perez stated she did not want to place the inmate in the restraint chair for the injection, since she had a good rapport with the inmate." (*Id.*) When plaintiff asked, 20 minutes later, whether the inmate had been placed in the restraint chair, Defendant [Officer]

Lippens said "no." (*Id.*) Plaintiff then "advised Defendant Lippens that the inmate needed to be restrained prior to proceeding with the injection to which Defendant Lippens responded 'this is not my call.'" (*Id.*)

"As the Plaintiff proceeded to walk towards the patient/inmates's cell, Defendant Perez stepped out of the inmate's cell and motioned Plaintiff to come into the cell." (*Id.*) "Plaintiff again told [defendants] that the inmate needed to be placed in the restraint chair," but the defendants "affirmatively chose not to," which "increased the danger Plaintiff would face in proceeding with the injection." (*Id.*) Defendant Perez then asked the inmate to consent to the injection, but the inmate responded: "'F*** no you ain't giving me no f***ing medication.'" (*Id.* at 5, alterations in complaint.) Defendant Perez then asked the inmate if she would take the medication with Perez by her side, or if she was going to fight. (*Id.*) The inmate responded: "'F*** yeah I'm going to fight. I'm not taking no f***ing medication.'" (*Id.* at 5, alterations in complaint.) "Plaintiff attempted to leave the cell without giving the forced injection." (*Id.*) As she was leaving the cell, Plaintiff felt a hard punch to the left side of her head over her left ear which knocked her off balance causing her to hit her head on the cement wall causing injuries to Plaintiff." (*Id.*)

Plaintiff sued, alleging that several individual officers, the Porter County Sheriff, and Porter County committed various state-law torts and deprived her of her Fourteenth Amendment right to due process in violation of 42 U.S.C. § 1983. (DE # 1.)

Defendants have moved to dismiss the federal claims under Federal Rule of Civil Procedure 12(b)(6) and 12(c). (DE # 17.)

## II. LEGAL STANDARD

When reviewing a motion to dismiss under either Rule 12(b)(6) or Rule 12(c), the court "take[s] the facts alleged in the complaint as true, drawing all reasonable inferences in favor of the plaintiff." *Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 633 (7th Cir. 2007). In assessing the pleading of the facts, the court must be cognizant that a complaint filed in federal court is governed by the liberal notice-pleading requirements of the Federal Rules of Civil Procedure, which only requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy Rule 8(a), "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"While the federal pleading standard is quite forgiving, . . . the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ray v. City of Chicago*, 629 F.3d 660, 662-63 (7th Cir. 2011); *Twombly*, 550 U.S. at 555, 570. A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**III.    DISCUSSION**

Defendants argue that plaintiff's federal claims, rooted in the due process clause of the Fourteenth Amendment, are subject to dismissal. In support of this argument, defendants point to the well-settled principle that, in general, the Constitution does not require the government to protect citizens from privately-created danger. *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189 (1989). Thus, defendants argue, plaintiff's Section 1983 claims against the individual defendants are subject to dismissal because they owed no duty to plaintiff to protect her from the inmate.

Plaintiff points out that there are exceptions to this rule, and rightly so. The Seventh Circuit has held, over the years, that citizens are entitled to protection if the state disables people from protecting themselves. *Witkowski v. Milwaukee County*, 480 F.3d 511, 511 (7th Cir. 2007). For example, the state must provide medical care to imprisoned persons, and take precautions to reduce the chance that foster parents will abuse children taken from their parents. *Id.* Likewise, state actors have some obligation to the public to ensure that if they arrest a car's driver, the driver's seat will not be thereafter occupied by a passenger known to be intoxicated. *Id.* So must the government furnish competent rescue services if it outlaws the private rescue of a drowning man. *Id.* In other words, "if the state puts a man in a position of danger from private persons and then fails to protect him . . . it is as much an active tortfeasor as if it had thrown him into a snake pit." *Id.* at 13 (internal quotation marks omitted). The Seventh Circuit has generally organized exceptions to the general rule of *DeShaney* into two groups: the

4

"special relationship" exception (seen most often in situations where a state has custody over a person), and the "state-created danger" exception. The parties dispute whether the latter exception applies in this case.

The Circuit Courts of Appeals have created various tests regarding the state-created danger exception. The Seventh Circuit's test has three parts: (1) the state, by its affirmative acts, must create or increase a danger faced by an individual; (2) the failure on the part of the state to protect an individual from such a danger must be the proximate cause of the injury to the individual; and (3) the state's failure to protect the individual must shock the conscience. *King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 817–18 (7th Cir. 2007). Notably, the Seventh Circuit has recently criticized its own three-part test for the state-created danger exception on the grounds that the test has no actual basis in *DeShaney*. *Weiland v. Loomis*, 938 F.3d 917, 921 (7th Cir. 2019). At present, it is not clear whether that test will continue to be good law in this circuit. Regardless, as explained in more detail below, the court finds that the constitutional claims in this case fail under Seventh Circuit precedent, with or without an analysis under the three-part state-created danger test.

The court begins with *Witkowski,* a case in which the Seventh Circuit considered a Section 1983 case brought by a deputy sheriff who was hired to provide extra security in a courtroom during the trial of a criminal defendant who "had threatened mayhem if convicted." 480 F.3d at 511. The courtroom's regular deputy sheriffs decided to take the criminal defendant to court without the planned stunbelt. *Id.* The regular deputy

5

sheriffs were also outside the courtroom during the "especially dangerous moment" of the verdict's return. *Id.* at 512. Upon hearing the guilty verdict, the criminal defendant leapt into the jury box, grabbed the plaintiff's gun, and shot plaintiff in the leg. *Id.* The plaintiff sued the county for a violation of his rights under the due process clause, claiming that the regular deputy sheriffs created a dangerous situation leading to his injury. *Id.*

The Seventh Circuit rejected the plaintiff's attempt to stretch the state-created danger exception into territory involving public employees. The court acknowledged that the state cannot "throw[ ] [a person] into a snake pit," but held that "someone who chooses to enter a snake pit or a lion's den for compensation cannot complain. . . . [H]e is a volunteer rather than a conscript. The state did not force him into a position of danger." *Id.* The court also noted that "[d]isregarding a known risk to a public employee does not violate the Constitution." *Id.* at 514. In coming to this conclusion, the court relied upon the Supreme Court's decision in *Collins v. Harker Heights,* in which the Court stated: "Neither the text nor the history of the Due Process Clause supports petitioner's claim that the governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause." 503 U.S. 115, 126 (1992).

In *Wallace v. Adkins,* 115 F.3d 427 (7th Cir. 1997), the Seventh Circuit came to a similar conclusion. In that case, the plaintiff was a prison guard who was specifically threatened by a particularly violent inmate. *Id.* at 428. The plaintiff had asked to be

6

separated from the inmate, but his superiors "required him to stand his post," assuring him that they would prevent the inmate from coming into contact with him. *Id.* Assurances notwithstanding, the inmate ultimately stabbed the plaintiff 13 times that day. *Id.*

The plaintiff sued prison officials, arguing his case was an exception to *DeShaney*'s general rule that the state owes no special duty to protect a person from private violence. The Seventh Circuit disagreed. The court reasoned that, though prison guards were, perhaps, "not free to leave without some potential repercussions for their job," and though "the risk of a job reprimand, or even firing, operates as a practical constraint on a person's action," such consequences are a "far cry" from the typical circumstances giving rise to a *DeShaney* exception (e.g., involuntary custody or commitment). *Id.* at 429. The court emphasized that the plaintiff was "free to walk out the door any time he wanted." *Id.* at 430.

*Witkowski* and *Wallace* are instructive here. Like the plaintiffs in those cases, the plaintiff in this case was hired to provide a particular public service. *Minix v. Canarecci,* 597 F.3d 824, 832 (7th Cir. 2010) ("contractors are treated the same as municipalities for liability purposes in a § 1983 action"). She is, therefore, a "volunteer rather than a conscript," and the state-created danger exception does not provide her with a way to avoid the general rule of *DeShaney*. *Witkowski,* 480 F.3d at 513.

Plaintiff urges this court to adopt the reasoning set forth by a fellow district court in *Martin-McFarlane v. City of Philadelphia,* 299 F. Supp. 3d 658, 667 (E.D. Pa. 2017). In

7

that case, it was alleged that "[defendants] C.O. Cox and C.O. Doman left Mackie, a man charged with murder, attempted murder, aggravated assault, robbery, and resisting arrest, and who was denied bail, unrestrained in a public hospital," which led to Mackie injuring the plaintiff, a hospital nurse. *Id.* The court held that the specific facts of that case allowed a plausible conclusion that the defendant-officers' behavior "shocked the conscience." *Id.* Such was an element of the state-created danger test in that circuit, just as it is here in the Seventh Circuit. Plaintiff argues that this court should find that she has stated a due process claim, just as the *Martin-McFarlane* court concluded the plaintiff had in that case.

This court declines to follow *Martin-McFarlane* for multiple reasons. First, *Martin-McFarlane's* plaintiff was a nurse in a public hospital setting, not a nurse providing services inside of a prison. Thus, *Witkowski* and *Wallace,* cases involving public employees, are far more analogous to the present facts.

Second, this case does not involve conscience-shocking facts, so it is not similar enough to *Martin-McFarlane* to warrant comparison. The *Martin-McFarlane* court pointed to the prisoner's dangerous history (which involved murder, attempted murder, aggravated assault, robbery, and resisting arrest, etc.) in holding that the defendants had engaged in behavior that shocked the conscience by leaving the prisoner unattended. Similar allegations do not exist in this case. Further, the allegations in this case, at most, suggest that the defendant guards were overly-brazen, cavalier, and negligent in their handling of the incident and the prisoner. Negligence is

8

"categorically beneath the threshold of constitutional due process." *King*, 496 F.3d at 819. A comparison to *Martin-McFarlane* only makes it more clear that plaintiff's claim fails under the Seventh Circuit's three-part state-created danger test because the facts alleged are not conscious-shocking.

Third, the principles articulated in *DeShaney* demand dismissal. The Seventh Circuit's recent criticism of its own state-created danger exception suggests that district courts should avoid mechanically applying a multi-part test, and instead focus on the general principle, taken directly from the Supreme Court's opinion in *DeShaney,* that "it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means." *DeShaney,* 489 U.S. at 200. Viewing plaintiff's constitutional claim through this lens, it fails. Defendants did not restrain plaintiff's ability to, for example, refuse to approach the cell, or walk out of the prison altogether. As in *Witkowski* and *Wallace*, the state did not force any aspect of the situation onto plaintiff. Plaintiff was "free to walk out the door any time [s]he wanted." *Wallace,* 115 F.3d at 430.

And finally, *Martin-McFarlane* is an unbinding decision by a fellow district court which this court is not required to follow in this case. Rather, this court is required to follow the precedent and guidance of the Seventh Circuit Court of Appeals and the Supreme Court. For all of the reasons explained herein, this court believes the Seventh

9

Circuit would find that plaintiff has failed to state a due process claim against the individual defendants.

Plaintiff also sued for relief under *Monell v. Department of Social Services,* 436 U.S. 658 (1978). Municipalities can be liable under Section 1983 only where there is individual liability on the underlying substantive constitutional claim. *Windle v. City of Marion,* 321 F.3d 658, 663 (7th Cir. 2003). Because plaintiff's Section 1983 claim fails against the individual defendants, plaintiff's municipal claims fail as well.

The court states no opinion as to the merits of any other potential avenues of relief, only that those avenues do not include the due process clause of the Constitution.

### IV. CONCLUSION

For the foregoing reasons, the motion to dismiss plaintiff's federal claims (DE # 17) is **GRANTED.** Plaintiff's other claims, which were not the subject of the motion to dismiss, remain pending.

**SO ORDERED.**

Date: March 3, 2021

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT